No. 12-56829

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

JONATHAN MICHAEL CASTRO,
*Plaintiff and Appellee*,

v.

COUNTY OF LOS ANGELES, LOS ANGELES SHERIFF'S DEPARTMENT,
DAVID VALENTINE AND CHRISTOPHER SOLOMON,
*Defendants and Appellants*.

---

Appeal from the United States District Court
for the Central District of California
United States District Judge Dale S. Fischer, Presiding
C.D. Cal. Case No. CV 10-05425 DSF (JEM)

---

## AMICUS BRIEF OF AMERICAN CIVIL LIBERTIES UNION, ACLU OF SOUTHERN CALIFORNIA, NATIONAL POLICE ACCOUNTABILITY PROJECT, HUMAN RIGHTS DEFENSE CENTER, AND RODERICK AND SOLANGE MACARTHUR JUSTICE CENTER IN SUPPORT OF APPELLEE

---

David M. Shapiro
RODERICK AND SOLANGE MACARTHUR
  JUSTICE CENTER
Northwestern University School of Law
375 E. Chicago Avenue
Chicago, IL 60611
312.503.0711
david.shapiro@law.northwestern.edu

Paul W. Hughes
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
202.263.3147
phughes@mayerbrown.com

*[additional counsel listed on inside cover]*

David C. Fathi*
ACLU NATIONAL PRISON PROJECT
915 15th St. N.W., 7th Floor
Washington, DC  20005
202.548.6603
dfathi@aclu.org

*Not admitted in DC; practice limited
 to federal courts

Peter Eliasberg
ACLU FOUNDATION
 OF SOURTHERN CALIFORNIA
1313 W. Eighth St.
Los Angeles, CA 90017
213.977.9500
peliasberg@aclusocal.org

*Attorneys for Amici*

## TABLE OF CONTENTS

INTEREST OF *AMICI CURIAE*………………………………………………...1

ARGUMENT……………………………………………………………...3

I. *MONELL* CLAIMS AGAINST A MUNICIPAL JAILER, SUCH AS THE COUNTY OF LOS ANGELES, ARE GOVERNED BY AN OBJECTIVE DELIBERATE INDIFFERENCE STANDARD…………4

    A.    Supreme Court Precedent Sets Forth An Objective Deliberate Indifference Test for Municipal Liability…………………………..4

    B.    Applying a "Subjective Awareness" Standard to Municipal Liability Creates a Problematic Legal Test Because Municipalities Are Inanimate…………………………………………………..9

    C.    Under the Objective Deliberate Indifference Test Applied to Municipalities, Constructive Knowledge Suffices to Put a Municipality on Notice that a Policy Creates a Risk of Constitutional Violations…………………………………..11

II. THIS COURT SHOULD NOT REACH THE "*KINGSLEY* QUESTION"……………………………………………………...12

III. IF THE COURT REACHES THE *KINGSLEY* QUESTION, IT SHOULD HOLD THAT *KINGSLEY* REJECTS CULPABLE STATE OF MIND TESTS IN FAILURE TO PROTECT CASES BROUGHT BY PRETRIAL DETAINEES………………………………………..13

    A.    The Supreme Court Has Articulated Culpable State of Mind Tests for a Specific Category of Incarcerated Persons—Convicted Prisoners………………………………………………14

    B.    In *Clouthier*, this Court Erroneously Extended the Deliberate Indifference Standard, Derived from the Eighth Amendment Prohibition of "Wanton" Punishment, to Pretrial Detainees, Who Have a Fourteenth Amendment Right Against All Punishment…………………………………………………16

C.      *Kingsley* Rejects the Logic of *Clouthier*, Holding that Suits Brought By Pretrial Detainees Are Governed By Objective Standards…........................................................................................18

D.      The Panel Majority's Post-*Kingsley* Defense of *Clouthier* Does Not Withstand Scrutiny…………………………………………………...20

E.      Many Pretrial Detainees Are Incarcerated Solely as a Result of Poverty, A Reality That Makes It All the More Important to Ensure Their Physical Safety…………………………………………23

IV.  THE PROPER TEST FOR FAILURE TO PROTECT CLAIMS BROUGHT BY PRETRIAL DETAINEES IS OBJECTIVE DELIBERATE INDIFFERENCE…………………………………………..26

CONCLUSION…………………………………………………………………..29

# TABLE OF AUTHORITIES

**Cases**

*Baker v. District of Columbia*, 326 F.3d 1302 (D.C. Cir. 2003) ..............................9

*Bearden v. Georgia*, 461 U.S. 660 (1983) ...............................................25

*Bell v. Wolfish*, 441 U.S. 520 (1979) ............................................. 16, 17, 18, 19, 22

*Cash v. County of Erie*, 654 F.3d 324 (2d Cir. 2011) ................................................8

*Castro v. County of Los Angeles*, 797 F.3d 654
  (9th Cir. 2015) ............................................................... 10, 12, 20, 21, 22, 27, 28

*City of Canton v. Harris*, 489 U.S. 378 (1989) ...................................... 5, 7, 8, 9, 26

*Clouthier v. County of Contra Costa*, 591 F.3d 1232
  (9th Cir. 2010) ................................................................... 4, 12, 13, 16, 18, 20, 27

*Daniels v. Williams*, 474 U.S. 327 (1986) ...............................................26

*Demery v. Arpaio*, 378 F.3d 1020 (9th Cir. 2004) ........................................... 17, 22

*DeShaney v. Winnebago County Department of Social Services*,
  489 U.S. 189 (1989) .............................................................................29

*DuBois v. Payne County Board of County Commissioners*, 543 F. App'x 841
  (10th Cir. 2013) ...............................................................................9, 11

*Estelle v. Gamble*, 429 U.S. 97 (1976) ...................................................14

*Farmer v. Brennan*, 511 U.S. 825
(1994) ................................................. 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 18, 22, 26

*Gibson v. County of Washoe*, 290 F.3d 1175 (9th Cir. 2002) ............................8, 11

*Gray v. City of Detroit*, 399 F.3d 612 (6th Cir. 2005) ................................................9

*Gregg v. Georgia*, 428 U.S. 153 (1976) ...................................................15

*Ingraham v. Wright*, 430 U.S. 651 (1977) .............................................17

*Jones v. Blanas*, 393 F.3d 918 (9th Cir. 2004) .......................................................17

*King v. Kramer*, 680 F.3d 1013 (7th Cir. 2012) ..................................................9, 11

*Kingsley v. Hendrickson*, 135 S.Ct. 2466
  (2015) ..................................................... 3, 4, 12, 13, 18, 19, 20, 21, 22, 26, 28, 29

*Lawson v. Dallas County*, 286 F.3d 257 (5th Cir. 2002)....................................9, 11

*Monell v. Department of Social Services*, 436 U.S. 658 (1978)................. 3, 5, 6, 26

*Moyle v. Anderson*, 571 F.3d 814 (8th Cir. 2009) ....................................................9

*Natale v. Camden County Correctional Facility*, 318 F.3d 575 (3d Cir. 2003)........9

*Rhodes v. Chapman*, 452 U.S. 337 (1981)..............................................................15

*State of Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459 (1947).....................14

*United States v. Salerno*, 481 U.S. 739 (1987) ......................................................24

*Warren v. District of Columbia*, 353 F.3d 36 (D.C. Cir. 2004)..........................9, 11

*Whitley v. Albers*, 475 U.S. 312 (1986) ....................................................... 15, 20, 21

*Wilson v. Seiter*, 501 U.S. 294 (1991) ............................................................. 15, 16

*Wood v. Hancock County Sheriff's Department*, 354 F.3d 57 (1st Cir. 2003) ..........9

*Young v. City of Augusta*, 59 F.3d 1160 (11th Cir. 1995) ........................................9


**Statutes**

42 U.S.C. § 1983................................................................................................5, 6

**Other Authorities**

American Bar Association, Criminal Justice Section, *State Policy Implementation
  Project* (2011) .....................................................................................................24

American Civil Liberties Union, *In For a Penny: The Rise of America's New
  Debtors' Prisons* (Oct. 2010) ..............................................................................25

BLACK'S LAW DICTIONARY (10th ed. 2014) ...........................................................14

Cherise Fanno Burdeen, Pretrial Justice Institute, *Jail Population Management: Elected County Officials' Guide to Pretrial Services* (Sept. 2009)......................25

Eric Holder, Att'y Gen., U.S. Dep't of Justice, Address at the National Symposium on Pretrial Justice (June 1, 2011)..........................................................................23

Manns, *Liberty Takings: A Framework for Compensating Pretrial Detainees*, 26 Cardozo L. Rev. 1947 (2005) ............................................................................24

Todd D. Minton & Daniela Golinelli, Bureau of Justice Statistics, U.S. Dep't of Justice, *Jail Inmates at Midyear 2013* (rev. Aug. 12, 2014). ........................ 23, 24

## CORPORATE DISCLOSURE STATEMENT

*Amici curiae* the American Civil Liberties Union, the American Civil Liberties Union of Southern California, the National Police Accountability Project, the Human Rights Defense Center, and the Roderick and Solange MacArthur Justice Center (together, "*amici*") certify that none of the *amici* has a parent corporation and no publicly held corporation holds more that 10% of the stock of any of the *amici*.

s/David M. Shapiro
Attorney for *Amici*

# INTEREST OF *AMICI CURIAE*[1]

The American Civil Liberties Union (ACLU) is a nationwide, non-profit, non-partisan organization with more than 500,000 members dedicated to the principles of liberty and equality embodied in the Constitution and this nation's civil rights laws. Throughout its 95-year history, the ACLU has been deeply involved in protecting the rights of prisoners, and in 1972 created the National Prison Project to further this work. The ACLU has appeared in numerous cases in this Court involving the rights of prisoners, both as direct counsel and as *amicus curiae*.

The ACLU of Southern California is one of three California Affiliates of the ACLU. The ACLU of Southern California was founded by Upton Sinclair in 1923, after Mr. Sinclair was arrested for reading the First Amendment aloud at a protest of striking dock workers. As a part of its mission, the ACLU of Southern California has repeatedly participated in matters before this Court both as counsel for a party or as an amicus in defense of the constitutional rights of incarcerated persons.

The National Police Accountability Project ("NPAP") was founded in 1999 by members of the National Lawyers Guild to address allegations of misconduct by law enforcement and corrections officers through coordinating and assisting civil-

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(c)(5), counsel for *amici curiae* states that no counsel for a party authored this brief in whole or in part, and no person other than *amici curiae*, their members, or their counsel made a monetary contribution to its preparation or submission.

rights lawyers willing to undertake the representation of victims. NPAP presently has more than five hundred attorney members throughout the United States.

The Human Rights Defense Center ("HRDC") is a nonprofit charitable corporation headquartered in Florida that advocates in furtherance of the human rights of people held in state and federal prisons, local jails, immigration detention centers, civil commitment facilities, Bureau of Indian Affairs jails, juvenile facilities, and military prisons. HRDC's advocacy efforts include publishing Prison Legal News ("PLN"), a monthly publication that covers criminal justice-related news and litigation nationwide, publishing and distributing self-help reference books for prisoners, and engaging in litigation in state and federal courts on issues concerning detainees. PLN has reported extensively on violence and failure to protect claims in prisons and jails.

The Roderick and Solange MacArthur Justice Center ("RSMJC") is a public interest law firm founded in 1985 by the family of J. Roderick MacArthur to advocate for human rights and social justice through litigation. RSMJC has offices at the Northwestern University School of Law, at the University of Mississippi School of Law and in New Orleans. RSMJC attorneys have led civil rights battles in areas that include police misconduct, the rights of the indigent in the criminal justice system, compensation for the wrongfully convicted, and the treatment of incarcerated men and women.

## ARGUMENT

*Amici* submit this brief to address two issues of law that divided the panel. First, we argue that *Monell* claims brought against municipal entities are governed by an objective deliberate indifference standard. Under Supreme Court precedent, the law of this Court, and the decisions of every other Circuit to decide the issue, the plaintiff need not show that the municipality subjectively knew of a serious risk to detainee safety, so long as the municipality had constructive knowledge of the risk. Indeed, because municipalities are not imbued with consciousness, the very idea of proving their subjective awareness stands on dubious analytical footing.

Second, a fair reading of the Supreme Court's recent decision in *Kingsley v. Hendrickson*, 135 S.Ct. 2466 (2015), requires the use of an objective standard for failure to protect claims brought by pretrial detainees, who are presumed innocent and have a Fourteenth Amendment right not to be punished by the government. This Court need not and should not decide this "*Kingsley* Question"—how does *Kingsley* affect failure to protect claims brought by pretrial detainees?—because the jury's verdicts against both the individual and municipal defendants can be affirmed on the basis of pre-*Kingsley* law. But should the Court reach that question, we propose an answer: an objective deliberate indifference standard for failure to protect claims brought by pretrial detainees against both municipal and individual defendants.

*Kingsley* makes it clear that the panel in *Clouthier v. County of Contra Costa*, 591 F.3d 1232 (9th Cir. 2010), erred when it imported a subjective standard designed for convicted prisoners into the jurisprudence that protects pretrial detainees. Moreover, leaving pretrial detainees with the limited protections offered to post-conviction prisoners would be inequitable because they are presumed innocent and an alarming proportion of detainees are incarcerated while awaiting trial solely as a result of their poverty.

**I.     *MONELL* CLAIMS AGAINST A MUNICIPAL JAILER, SUCH AS THE COUNTY OF LOS ANGELES, ARE GOVERNED BY AN OBJECTIVE DELIBERATE INDIFFERENCE STANDARD.**

**A.     Supreme Court Precedent Sets Forth An Objective Deliberate Indifference Test for Municipal Liability.**

Pretrial detainees housed in county jails may bring two types of failure to protect claims for damages—(1) claims against staff in their individual capacity, and (2) entity liability claims against the county. The latter may be variously styled, with little practical difference, as claims against the jail, claims against the county that runs the jail, or official capacity claims against the people responsible for jail policy. The same shorthand—"deliberate indifference"—is used to describe the standard for both types of failure to protect claims.

But the case law demonstrates that "deliberate indifference" in the context of a failure to protect claim against an individual officer does not mean the same thing as "deliberate indifference" in the context of a failure to protect claim against an

entity. In a claim against an individual, "deliberate indifference" means the defendants subjectively knew of and disregarded a substantial risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994).[2] In the context of a claim against a municipality, however, "deliberate indifference" means that a municipal policy created an obvious risk of harm—and liability can be established through constructive notice regardless of whether any municipal official subjectively realized the risk. *Id.* at 840-41; *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

The story of how this came to pass—how "deliberate indifference" means one thing in one legal context and another thing in a different context—begins with *Monell v. Department of Social Services*, in which the Supreme Court held that a municipality cannot be held liable under 42 U.S.C. § 1983 for the actions of its subordinates in *respondeat superior* but can be held liable when a municipal "policy or custom … inflicts the injury." 436 U.S. 658, 694 (1978). Building on *Monell*, the Court held in *City of Canton v. Harris* that a municipality is liable when a policy causes a constitutional violation and the municipality's policy "reflects deliberate indifference to the constitutional rights of its inhabitants." 489 U.S. at 392. In the municipal liability framework, deliberate indifference was defined in *Canton* to

---

[2] More specifically, *Farmer* created a subjective deliberate indifference standard for failure to protect suits brought against individuals by *convicted prisoners*. 511 U.S. at 837. As discussed below, *see infra* § III, the Supreme Court has never established a standard for failure to protect suits brought against individuals by *pretrial detainees*.

include not only policies that disregard a *subjectively known* risk of constitutional violation but also polices that disregard an *obvious* risk of constitutional violation. *Id*. at 390. Deficiencies in a policy may be "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent." *Id.* This type of deliberate indifference—disregarding a self-evident risk of constitutional violation—can be described as "objective deliberate indifference." And under this standard, "[w]here a § 1983 plaintiff can establish that the facts available to city policymakers put them on actual *or constructive* notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens, the dictates of *Monell* are satisfied." *Id.* at 396 (emphasis added).

A separate standard governs individual liability. Under *Farmer v. Brennan*, 511 U.S. 825, 841 (1994), individual defendants can be held liable only for disregarding risks of which they are subjectively aware, a standard that may be referred to as "subjective deliberate indifference." In other words—and in contrast to the objective deliberate indifference standard for municipal liability—an individual who is subjectively unaware of an obvious risk is not deliberately indifferent. *Id.* at 838.[3]

---

[3] What this brief refers to as "objective deliberate indifference" and "subjective deliberate indifference," the Supreme Court in *Farmer* also referred to as "civil law

*Farmer* created a subjective test for deliberate indifference for failure to protect claims against individuals. None of the defendants was an entity, and the Court made it clear that it had no intention of disturbing *Canton*'s objective deliberate indifference test for claims against municipalities. *Id.* at 841. The Court noted that "the *Canton* understanding of deliberate indifference, permitting liability to be premised on obviousness or constructive notice" could not be described "as anything but objective." *Id.* The Court then differentiated the standard for entity liability claims from the standard for individual liability claims by stating "*Canton*'s objective standard . . . is not an appropriate test for determining the liability of prison *officials* under the Eighth Amendment as interpreted in our cases." *Id.* at 841 (emphasis added).

The Court recognized that the decision would result in "deliberate indifference" meaning one thing in individual liability cases and another in municipal liability cases, but was not troubled by that linguistic anomaly because "deliberate indifference" is merely a judicial term of art. "Because 'deliberate indifference' is a judicial gloss, appearing neither in the Constitution nor in a statute, we could not accept petitioner's argument that the test for 'deliberate indifference' described in [*Canton*] must necessarily govern here." *Id.* at 840.

recklessness" and "criminal recklessness," respectively. *Farmer*, 511 U.S. at 836-37.

Why have a different deliberate indifference test for municipal liability and individual liability? Because, the *Farmer* Court explained, a court can inquire as to the subjective awareness of a person, but the subjective awareness of an inanimate organization is a contradiction in terms: "[C]onsiderable conceptual difficulty would attend any search for the subjective state of mind of a governmental entity, as distinct from that of a governmental official." *Id.* at 841.

This Court and the other federal courts of appeals have followed the Supreme Court precedent described above, applying the objective deliberate indifference test to failure to protect claims brought against jails and the counties that run them. In *Gibson v. County of Washoe*, where a jail detainee was harmed by a county policy regarding the handling of prescription medication, this Court held:

> The *Canton* Court recognized that when the need to remedy the omission "is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, ... the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. . . . [T]his standard does not contain a subjective component. As a result, there is no need for Ms. Gibson to prove that the County policymakers actually knew that their omissions would likely result in a constitutional violation.

290 F.3d 1175, 1195 (9th Cir. 2002) (citing *Canton*, 489 U.S. at 390; *Farmer*, 511 U.S. at 841).

All other courts of appeals to consider the question have reached the same result, making the panel decision here an outlier. *Cash v. Cty. of Erie*, 654 F.3d 324, 341 n.8 (2d Cir. 2011) (in a jail failure to protect case, "for purposes of establishing

municipal liability, deliberate indifference is an objective standard"); *Baker v. District of Columbia*, 326 F.3d 1302, 1307 (D.C. Cir. 2003) ("Deliberate indifference [in the context of municipal liability] is an objective standard") (citing *Farmer*, 511 U.S. at 841); *King v. Kramer*, 680 F.3d 1013, 1021 (7th Cir. 2012) (constructive knowledge suffices in municipal jail liability cases); *Wood v. Hancock Cty. Sheriff's Dep't*, 354 F.3d 57, 64 (1st Cir. 2003) (same); *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004) (objective standard); *Lawson v. Dallas Cty.*, 286 F.3d 257, 264 (5th Cir. 2002) (same); *DuBois v. Payne Cty. Bd. of Cty. Comm'rs*, 543 F. App'x 841, 849 (10th Cir. 2013) (same); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (obviousness suffices); *Gray v. City of Detroit*, 399 F.3d 612, 618 (6th Cir. 2005) (same); *Moyle v. Anderson*, 571 F.3d 814, 818-19 (8th Cir. 2009) (objective standard) (citing *Canton*, 489 U.S. at 390); *Young v. City of Augusta*, 59 F.3d 1160, 1172 (11th Cir. 1995) (constructive notice, satisfied by obviousness, suffices).

**B.  Applying a "Subjective Awareness" Standard to Municipal Liability Creates a Problematic Legal Test Because Municipalities Are Inanimate.**

The panel's "subjective awareness" test for a municipality is analytically dubious. Counties, cities, and jails are not people but inanimate entities, and as such, they cannot be "subjectively aware" of anything. Probing the "subjective awareness" of a municipality is like asking a rock to describe its feelings.

Justice Souter's warning in *Farmer*—that "considerable conceptual difficulty would attend any search for the subjective state of mind of a governmental entity, as distinct from that of a governmental official," 511 U.S. at 841—proved prescient in this case as the panel struggled to divine the subjective awareness of the County of Los Angeles. Both the panel majority and Judge Graber, who concurred in part and dissented in part, agreed that California's Minimum Standards for Adult Detention Facilities required sobering cells to have an audio-monitoring system, that the County Board of Supervisors adopted the Standards, that no such system was in place in the sobering cell where Mr. Castro was stomped to the point of severe brain damage, and that compliance with the regulation could have saved him. *Castro v. Cty. of Los Angeles*, 797 F.3d 654, 673 (9th Cir. 2015); *id.* at 678 (Graber, J., concurring in part and dissenting in part). The majority thought the adoption of the Standards provided "no . . . evidence" that the Board was aware of what it was adopting, *id.* at 674, while Judge Graber viewed the adoption of the standards as "conclusive proof" of actual knowledge, *id.* at 678 (Graber, J., concurring in part and dissenting in part).

This debate—in which "conclusive proof" for one jurist was "no evidence" for other jurists—illuminates the incoherence of the question being asked. What would it mean for the Board to be "aware" of the relevant regulations? That one Board member was aware of the Standards when they were adopted? That a majority

of Board members were aware? That Board staffers were aware? What if the Sheriff, responsible for the jail system, knew about the Standards? What if the top county official located at the jail knew about them? This case alone may not present all of these questions, but they and others like them will surely follow if the en banc Court, like the panel, decides to anthropomorphize the County of Los Angeles and probe its subjective awareness.

**C.  Under the Objective Deliberate Indifference Test Applied to Municipalities, Constructive Knowledge Suffices to Put a Municipality on Notice that a Policy Creates a Risk of Constitutional Violations.**

It is well-settled that under the objective test for deliberate indifference, constructive knowledge suffices to put a municipality on notice that a policy is likely to cause constitutional violations. *See Farmer*, 511 U.S. at 841 (stating that objective deliberate indifference permits "liability to be premised on obviousness or constructive notice"); *Gibson v. County of Washoe*, 290 F.3d 1175, 1186 (9th Cir. 2002) ("actual or constructive notice"); *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004); *King v. Kramer*, 680 F.3d 1013, 1021 (7th Cir. 2012); *Lawson v. Dallas Cty.*, 286 F.3d 257, 264 (5th Cir. 2002); *DuBois v. Payne Cty. Bd. of Cty. Comm'rs*, 543 F. App'x 841, 849 (10th Cir. 2013). Thus, the Board's adoption of the Minimum Standards for Adult Detention Facilities, which provided constructive notice of the risk of failing to have an audio-monitoring system, was more than sufficient evidence to support the jury's imposition of municipal liability.

## II. THIS COURT SHOULD NOT REACH THE *"KINGSLEY QUESTION."*

We turn now to the standard governing Mr. Castro's claims against the individual defendants. In *Clouthier v. County of Contra Costa*, this Court erroneously extended *Farmer*'s subjective deliberate indifference standard, intended for convicted prisoners, to failure to protect claims brought by pretrial detainees. 591 F.3d 1232, 1242 (9th Cir. 2010). In *Kingsley v. Hendrickson*, however, the Supreme Court recently held that an objective standard applies to use of force claims brought by pretrial detainees against individual officers. 135 S.Ct. 2466 (2015). While failure to protect claims against municipalities have, as argued above, always been governed by objective standards, *Kingsley* now suggests that even claims against individuals are governed by objective standards—*so long as the suit is brought by a pretrial detainee as opposed to a convicted prisoner.*

While the panel in this case debated the implications of *Kingsley* for failure to protect claims brought by pretrial detainees, this case is not a desirable forum for deciding that issue. As for Mr. Castro's individual liability claims, the jury already found subjective deliberate indifference, *Castro*, 797 F.3d at 666, and no one argues that subjective deliberate indifference is an insufficient basis for a failure to protect claim brought by a pretrial detainee against individual defendants. As for Mr. Castro's municipal liability claim, *Kingsley* need not enter into the picture. As demonstrated in Section I, the standard for municipal liability claims even before

*Kingsley* was objective deliberate indifference, and the jury, on the basis of ample evidence, found that Mr. Castro met that standard.

**III.  IF THE COURT REACHES THE *KINGSLEY* QUESTION, IT SHOULD HOLD THAT *KINGSLEY* REJECTS CULPABLE STATE OF MIND TESTS IN FAILURE TO PROTECT CASES BROUGHT BY PRETRIAL DETAINEES.**

In the event that the Court does reach the *Kingsley* question, a fair reading of *Kingsley* requires the use of an objective test for failure to protect claims brought by pretrial detainees against any defendant, whether municipal or individual. In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that the subjective deliberate indifference standard applied to failure to protect claims brought against individual officers by convicted prisoners, but the Supreme Court has never established a standard for failure to protect claims brought by pretrial detainees.

Below, we set forth four principal points. First, *Farmer*'s subjective deliberate indifference standard emanates solely from the Eighth Amendment's Cruel and Unusual Punishments Clause, which prohibits the "wanton" infliction of punishment. Second, in *Clouthier*, this Court extended *Farmer*'s subjective deliberate indifference standard for convicted prisoners to failure to protect claims brought by pretrial detainees. Third, *Kingsley* dismantles *Clouthier* by making clear that pretrial detainees are entitled to greater constitutional protection than convicted prisoners. Unlike convicted prisoners, pretrial detainees are presumed innocent, have not been convicted of any crime, may not be punished at all because they are

incarcerated solely for purposes of detention, and are shielded by a different constitutional provision (the Fourteenth Amendment Due Process Clause, as opposed to the Eighth Amendment Cruel and Unusual Punishments Clause). Pretrial detainees have a right against *all* punishment—a greater protection than a convicted prisoner's right against *cruel and unusual* punishment. Fourth, many pretrial detainees are incarcerated solely as a result of their poverty and their consequent inability to post bail, a reality that makes it all the more important to ensure their physical safety.

A.   **The Supreme Court Has Articulated Culpable State of Mind Tests for a Specific Category of Incarcerated Persons—Convicted Prisoners.**

The Supreme Court has long held that the Eighth Amendment's Cruel and Unusual Punishments Clause forbids the "wanton infliction of pain." *See State of Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463 (1947). A "wanton" state of mind is akin to subjective deliberate indifference. BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "wanton" as "[u]nreasonably or maliciously risking harm while being utterly indifferent to the consequences").

The Court has repeatedly extended this wanton state of mind requirement to Eighth Amendment cases brought by convicted prisoners to challenge their treatment while incarcerated. In *Estelle v. Gamble*, the Court derived a subjective deliberate indifference standard for medical care claims brought by convicted prisoners from the Eighth Amendment's prohibition of "wanton" punishment: "We

14

. . . conclude that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). In *Whitley v. Albers*, the Court applied another culpable state of mind requirement—the "malicious[] and sadistic[]" test—to excessive force claims brought by convicted prisoners. 475 U.S. 312, 320 (1986). The Court again derived this subjective test from the Eighth Amendment's wantonness requirement: "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Id.* at 319. In *Wilson v. Seiter*, the Supreme Court applied the subjective deliberate indifference standard to ongoing prison conditions because prior Eighth Amendment cases prohibiting the "wanton" infliction of pain required "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." 501 U.S. 294, 299 (1991); *see also Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (Eighth Amendment prohibits the "wanton and unnecessary infliction of pain" on convicted prisoners).

In *Farmer v. Brennan*, the Supreme Court applied these precedents to an Eighth Amendment failure to protect claim brought by a convicted prisoner, who

alleged that prison officials failed to protect her against obvious risks of being raped.

511 U.S. 825, 829-30 (1994). The Court applied a subjective state of mind standard,

which reflected "the principle that 'only the unnecessary and wanton infliction of

pain implicates the Eighth Amendment.' To violate the Cruel and Unusual

Punishments Clause, a prison official must have a 'sufficiently culpable state of

mind.'" *Id.* at 834 (quoting *Wilson*, 501 U.S. at 297, 302-03). In *Farmer*, the

Supreme Court had no occasion to consider the standard for failure to protect claims

brought by pretrial detainees.

**B.** **In *Clouthier*, this Court Erroneously Extended the Deliberate Indifference Standard, Derived from the Eighth Amendment Prohibition of "Wanton" Punishment, to Pretrial Detainees, Who Have a Fourteenth Amendment Right Against All Punishment.**

We turn now to pretrial detainees, men and women who "have been charged

with a crime but who have not yet been tried on the charge." *Bell v. Wolfish*, 441

U.S. 520, 523 (1979). The Supreme Court has never applied a deliberate indifference

test to claims brought by pretrial detainees. But it has long intimated that pretrial

detainees are fundamentally different from convicted prisoners and are entitled to

greater constitutional protections.

In *Bell*, the Court considered conditions of confinement claims brought by

pretrial detainees. *Id.* Whereas the Eighth Amendment prohibits "wanton"

punishment of convicted prisoners, the Court held that the Fourteenth Amendment

prohibits *all punishment* of pretrial detainees:

In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, *a detainee may not be punished* prior to an adjudication of guilt in accordance with due process of law.

441 U.S. 520, 535 (1979) (emphasis added) (citations omitted).

The Court elaborated:

Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.

*Id.* at 535 n.16 (citation omitted) (quoting *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977)).

Following *Bell*, this Court recognized the distinction between Eighth Amendment protection for convicted prisoners and Fourteenth Amendment protection for pretrial detainees as "critical." *Demery v. Arpaio*, 378 F.3d 1020, 1028-29 (9th Cir. 2004). The Court stated: "[T]he Fourteenth Amendment prohibits all punishment of pretrial detainees, while the Eighth Amendment only prevents the imposition of cruel and unusual punishment on convicted prisoners." *Id.*; *see also Jones v. Blanas*, 393 F.3d 918, 931-32 (9th Cir. 2004) ("[W]hen the state detains an individual on a criminal charge, that person, unlike a criminal convict, 'may not be

*punished* prior to an adjudication of guilt in accordance with due process of law.'") (quoting *Bell*, 441 U.S. at 535).

Despite these precedents, in *Clothier*, the panel brushed aside the constitutional differences between pretrial detainees and post-conviction prisoners and imported *Farmer*'s Eighth Amendment subjective deliberate indifference standard for failure to protect claims brought by post-conviction prisoners to Fourteenth Amendment failure to protect claims brought by pretrial detainees. 591 at 1242. *Clouthier*, then, ignored the fact that *Farmer*'s subjective deliberate indifference standard rested upon the Eighth Amendment's protection of post-conviction prisoners against "wanton" punishment—a universe of law that had little relevance to the Fourteenth Amendment right of a pretrial detainee to be free from all punishment. In effect, the decision marginalized the significance of trial and conviction. For if a pretrial detainee, like a convicted prisoner, can be subjected to any punishment that is not cruel and unusual, the State is authorized to inflict punishment without a finding of guilt.

## C. *Kingsley* Rejects the Logic of *Clouthier*, Holding that Suits Brought By Pretrial Detainees Are Governed By Objective Standards.

The Supreme Court's recent decision in *Kingsley v. Hendrickson* fatally undermines the reasoning and holding of *Clouthier* by forbidding the contamination of Fourteenth Amendment pretrial detainee jurisprudence with the importation of Eighth Amendment tests designed for convicted prisoners. In *Kingsley*, the Supreme

Court concluded that Eighth Amendment culpable state of mind rules arising out of the prohibition of "wanton" punishment cannot be extended to pretrial detainees, who have a Fourteenth Amendment right to be free from all punishment. 135 S.Ct. at 2475. "The language of the two Clauses differs," the Court reasoned, "and the nature of the claims often differs. And, most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all . . ." *Id.*

Because there is no requirement that a pretrial detainee demonstrate the wanton infliction of pain, "a pretrial detainee can prevail by providing *only objective evidence* that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Id.* at 2473-74 (emphasis added). Thus, "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one." *Id.* at 2473.

The implications of *Kingsley* are by no means limited to excessive force claims. The *Kingsley* Court interpreted an earlier case on jail conditions, *Bell v. Wolfish*, 441 U.S. 520, 523 (1977), as mandating the use of an objective standard for many claims brought by pretrial detainees: "The *Bell* Court applied [an] objective standard to evaluate a *variety* of prison conditions . . . . In doing so, it did not consider the prison officials' subjective beliefs about the policy." *Kingsley*, 135 S.Ct. 2446, 2473 (2015) (citing *Bell*, 441 U.S. at 541-43) (emphasis added).

The mandate of *Kingsley*, in short, is that objective standards, not the subjective standards that characterize Eighth Amendment jurisprudence, must govern claims brought by pretrial detainees. *Clouthier* does precisely what *Kingsley* now forbids—it reduces the protections afforded to pretrial detainees by cutting and pasting the subjective law designed for convicted prisoners into the law governing pretrial detainees. *Clouthier* should be overruled in light of *Kingsley*.

**D.  The Panel Majority's Post-*Kingsley* Defense of *Clouthier* Does Not Withstand Scrutiny.**

The panel's attempt to snatch *Clouthier* from the jaws of *Kingsley* is unavailing. First, the majority asserts that "*Kingsley* itself acknowledges that it does not necessarily impose different standards for claims brought under the Eighth Amendment as opposed to the Fourteenth Amendment." *Castro*, 797 F.3d at 664. On the contrary, *Kingsley* manifestly results in the application of different standards—it applies an objective test for force claims brought by pretrial detainees but does not purport to overrule *Whitley v. Albers*, 475 U.S. 312 (1986), which holds that the subjective "malicious and sadistic" standard governs force claims brought by convicted prisoners. While *Kingsley* notes that the use of an objective standard might "raise questions" about the appropriateness of a subjective standard in Eighth Amendment excessive force claims brought by convicted prisoners, the Court explicitly declined to reach that question and left *Whitley*'s holding undisturbed.

*Kingsley*, 135 S.Ct. at 2476. Thus, the holding of *Kingsley* creates a clear difference between the protections afforded to pretrial detainees and convicted prisoners.

Second, the majority suggests that *Kingsley*'s rejection of a subjective excessive force standard for pretrial detainees litigating Fourteenth Amendment claims has little bearing on failure to protect claims because Eighth Amendment excessive force claims, in contrast to failure to protect claims, have always been governed by objective standards. *Castro*, 797 F.3d at 665. "For years," the panel opined, "the Supreme Court has held that the focus of any excessive-force claim, whether brought under the Eighth Amendment or the Fourteenth Amendment, is on the reasonableness of an officer's actions rather than on whatever thoughts, knowledge, or motivation may have driven those actions." *Id.* This is a serious misstatement of the law. Under *Whitley*, Eighth Amendment excessive claims have long been governed by the "malicious and sadistic" standard, which has nothing to do with objective reasonableness and everything to do with subjective motivation. 475 U.S. at 320-21. In *Kingsley*, the Court held that this sort of subjective standard is irrelevant to Fourteenth Amendment cases. 135 S.Ct. at 2475.

Next, the panel asserts that excessive force claims involve affirmative actions but "failure-to-protect claims . . . involve no affirmative act at all by the defendant." *Castro*, 797 F.3d at 665. This assertion too is wrong. Some failure to protect claims involve omissions, but many others involve affirmative acts. Take this case, where

the liability of one of the defendants, Valentine, was based on his affirmative act of deciding to place Mr. Castro in a sobering cell with a dangerous man. *Id.* at 668.

Finally, the majority opines that, in failure to protect claims, "we must . . . assess what was going on inside the defendant's mind that led to his failure to act." *Id*. Yet this assertion is supported solely with a citation to *Farmer*, which applies exclusively to convicted prisoners. *See supra* § III.A. The majority justifies its use of the *Farmer* standard by brushing aside the differences between the Eighth and Fourteenth Amendments, asserting that the "constitutional source" of the right is of little moment. *Castro*, 797 F.3d at 665. Discounting the significance of the source of the right flies in the face of *Kingsley*, which states, "[t]he language of the two Clauses differs, and the nature of the claims often differs. And, most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all ..." *Kingsley*, 135 S.Ct. at 2475; *see also Demery v. Arpaio*, 378 F.3d 1020, 1028-29 (9th Cir. 2004) (describing the distinction between Eighth Amendment protection for convicted prisoners and Fourteenth Amendment protection for pretrial detainees as "critical").[4]

---

[4] Of course, if the Court adopts an objective standard, this would in no way undermine the verdict or the denial of qualified immunity by the District Court at the conclusion of trial. The jury found that the individual defendants were subjectively deliberately indifferent, meaning they subjected Mr. Castro to cruel and unusual punishment under the Eighth Amendment standard. The greater includes the lesser—the infliction of cruel and unusual punishment *ipso facto* requires the infliction of punishment, which the Fourteenth Amendment prohibits. *Bell*, 441 U.S at 535 ("In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without

**E.    Many Pretrial Detainees Are Incarcerated Solely as a Result of Poverty, A Reality That Makes It All the More Important to Ensure Their Physical Safety.**

Aside from being compelled by case law, objective standards for the protection of pretrial detainees will help to ensure the physical safety of a population that is often incarcerated solely as a result of their poverty. To be jailed because of one's indigence is bad enough. To be jailed due to indigence and then severely injured is far worse.

County and city jails in the United States are home to more than 700,000 incarcerated individuals.[5] The majority of the jail population—more than 60 percent as of 2013—are pretrial detainees who have not been tried or convicted on a current charge. *2013 Statistical Tables* 1. Only a fraction of pretrial detainees face charges for violent crimes.[6] The remainder stand accused of property-related and other

--------

due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.") (citation omitted).

[5] *See* Todd D. Minton & Daniela Golinelli, Bureau of Justice Statistics, U.S. Dep't of Justice, *Jail Inmates at Midyear 2013—Statistical Tables* 1 (rev. Aug. 12, 2014) ("*2013 Statistical Tables*"); Subramanian et al., VERA Institute of Justice, *Incarceration's Front Door: The Misuse of Jails in America* 4 (2015) ("VERA Report").

[6] *See* Eric Holder, Att'y Gen., U.S. Dep't of Justice, Address at the National Symposium on Pretrial Justice (June 1, 2011), http://www.justice.gov/opa/speech/attorney-general-eric-holder-speaks-national-symposium-pretrial-justice; *see also* VERA Report 5 (citing Doris J. James, Bureau of Justice Statistics, U.S. Dep't of Justice, *Profile of Jail Inmates, 2002*, at 3 (2004)).

nonviolent crimes, or, in many cases, the "offense" of owing someone (typically the government) money they cannot afford to pay. VERA Report at 5. According to an American Bar Association study, two thirds of pretrial defendants "pose no significant risk to themselves or the community … [and] represent[] a low risk of flight."[7]

Instead, the chief factor distinguishing most pretrial detainees from defendants who have been released to await trial on bail is not a greater propensity for violence or flight, but simply indigence. As one study recently found, "[m]oney, or the lack thereof, is now the most important factor in determining whether someone is held in jail pretrial." VERA Report 32.

In many cases, defendants face pretrial detention simply because they cannot afford to post bail. Although the Eighth Amendment prohibits imposition of "excessive" bail, *see United States v. Salerno*, 481 U.S. 739, 752 (1987), courts retain significant discretion to set bail amounts. In the exercise of that discretion, courts often set those amounts at levels many defendants, who often are not represented by counsel at bail hearings, cannot afford.[8] In a study of detainees charged with felonies in state court, the Bureau of Justice Statistics recently found

---

[7] American Bar Association, Criminal Justice Section, State Policy Implementation Project 2 (2011), http://www.americanbar.org/content/dam/aba/administrative/criminal_justice/spip_handouts.pdf (last visited Mar. 9, 2015).
[8] *See* Manns, *Liberty Takings: A Framework for Compensating Pretrial Detainees*, 26 Cardozo L. Rev. 1947, 1958-1962 (2005).

that as many as five out of six detainees were given the opportunity to be released on bail pending trial but could not afford the amount of bail set.[9]

Another significant portion of the county and city jail population consists of individuals who have been detained simply because they have failed to pay debts or judicially imposed fees, fines, costs, or restitution known as legal financial obligations (LFOs).[10] Although the Supreme Court has long recognized "debtors' prisons" to be unconstitutional, *see Bearden v. Georgia*, 461 U.S. 660 (1983), several studies have documented the extent to which indigent defendants are detained for failure to pay such costs. For example, an ACLU investigation of practices in five States found widespread increases in the assessment and collection of LFOs from incarcerated persons. *See In For a Penny* 5-9. Indigent defendants are repeatedly arrested and detained for failure to pay LFOs, warrant fees, and even "booking and jail 'pay-to-stay' fees"—a process through which detainees are invoiced for the costs of room and board, medical and dental treatment, and random drug testing during the detention period. *Id.* at 10.

---

[9] Cherise Fanno Burdeen, Pretrial Justice Institute, Jail Population Management: Elected County Officials' Guide to Pretrial Services 5 (Sept. 2009) (citing Bureau of Justice Statistics, Pretrial Release of Felony Defendants in State Courts, SCPS 1990-2004 (Jan. 2009 rev.)).

[10] *See* American Civil Liberties Union, *In for a Penny: The Rise of America's New Debtors' Prisons* 5 (Oct. 2010) ("*In For a Penny*").

## IV. THE PROPER TEST FOR FAILURE TO PROTECT CLAIMS BROUGHT BY PRETRIAL DETAINEES IS OBJECTIVE DELIBERATE INDIFFERENCE.

*Kingsley* mandates that the Fourteenth Amendment rights of pretrial detainees be protected by objective standards. Other precedent establishes that negligence is not the standard that governs such claims. *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (holding that Fourteenth Amendment rights are "not implicated by a negligent act of an official"). The proper rule, then, is an objective standard, but one more exacting than negligence.

Under the logic of *Kingsley*, the standard for failure to protect claims brought by pretrial detainees should be objective deliberate indifference (also referred to as "civil law recklessness"). Officers act with objective deliberate indifference when they disregard obvious risks of serious harm. Thus, an officer whose failure to prevent harm is merely unreasonable (*i.e.*, negligent) does not incur liability. But if danger is both serious and obvious, and an officer fails to take action, it is no defense under the objective deliberate indifference standard that the officer did not subjectively appreciate the danger. *Farmer*, 511 U.S. at 840-42. Under *City of Canton v. Harris*, 489 U.S. 378, 390 (1989), courts regularly apply the objective deliberate indifference standard to *Monell* claims. *See supra* § I.A. Therefore, adopting this standard would not require a foray into uncharted territory.

*Amici*'s proposed standard differs in one respect from the standard proposed by Judge Graber. *See Castro*, 797 F.3d at 681-82 (Graber, J., concurring in part and dissenting in part). In Judge Graber's view, officers must be subjectively aware of the facts giving rise to an inference of serious danger. *Id.* Thus, an officer can avoid liability by proving subjective unawareness of the facts, even if the facts are obvious. *See id.* On the other hand, if an officer is subjectively aware of the relevant facts, and the relevant facts create an obvious inference of danger, the officer cannot avoid liability by failing to draw a self-evident inference from subjectively known facts. *See id.*

While Judge Graber's standard is a substantial improvement over the subjective deliberate indifference standard applied in *Clouthier*, the objective deliberate indifference standard proposed by *amici* is more consonant with the law. Judge Graber's standard is a hybrid objective-subjective standard: Knowledge of facts is tested subjectively, but inferences from known facts are tested objectively.

As demonstrated above, *see supra* § III.A, culpable state of mind tests are wholly a creature of the Eighth Amendment prohibition on cruel, unusual, or "wanton" punishment. Claims brought by jail detainees, by contrast, are governed by objective standards. *See supra* § III.C. The use of a subjective test, even a partially subjective test such as Judge Graber's, in claims brought by jail detainees lacks doctrinal grounding in Supreme Court case law.

Judge Graber derives the hybrid test from the two-prong standard applied in *Kingsley*. *Castro*, 797 F.3d at 682 (Graber, J., concurring in part and dissenting in part). Under *Kingsley*, the jailer's conduct must be intentional in a narrow sense, meaning non-accidental. 135 S.Ct. at 2472. ("[I]f an officer's Taser goes off by accident or if an officer unintentionally trips and falls on a detainee, causing him harm, the pretrial detainee cannot prevail on an excessive force claim."). Second, the conduct must be objectively unreasonable. *Id.* at 2472-73. In Judge Graber's view, the subjectively-known-facts component of the hybrid test mirrors the non-accidental component of the *Kingsley* standard. *Castro*, 797 F.3d at 681-82 (Graber, J., concurring in part and dissenting in part).

In our view, however, non-accidental inaction in the failure to protect context tracks *Kingsley*'s non-accidental application of force requirement. Just as the officer-defendant in *Kingsley* did not claim that he accidentally used force on Mr. Kingsley, here Officer Solomon does not claim that he accidentally failed to check on Mr. Castro or that he meant to do so but then forgot about it. What he did was make a choice not to check on Mr. Castro. And it was that decision, intentionally made, that left Mr. Castro in a pool of blood, his mental capacity diminished severely and forever.

The objective deliberate indifference standard strikes an appropriate balance between protecting the Fourteenth Amendment rights of pretrial detainees on the one

hand and, on the other, ensuring that jail officials receive more protection in constitutional claims than in mere tort actions. Because objective deliberate indifference requires an obvious risk—a far more exacting standard than mere negligence—it does not purport to "tortify the Fourteenth Amendment." *Kingsley*, 135 S. Ct. at 2479 (Scalia, J., dissenting). At the same time, it ensures the reasonable safety of pretrial detainees, who have not been convicted of any crime, but who are exposed to danger as an incident of their incarceration: "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989).

## CONCLUSION

For the foregoing reasons, this Court should affirm, in full, the judgment of the District Court.

Respectfully Submitted,


s/David M. Shapiro
David M. Shapiro
RODERICK AND SOLANGE MACARTHUR
  JUSTICE CENTER
Northwestern University School of Law
375 E. Chicago Avenue
Chicago, IL 60611
312.503.0711
david.shapiro@law.northwestern.edu


David C. Fathi*
ACLU NATIONAL PRISON PROJECT
915 15th St. N.W., 7th Floor
Washington, DC  20005
202.548.6603
dfathi@aclu.org

Paul W. Hughes
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
202.263.3147
phughes@mayerbrown.com


Peter Eliasberg
ACLU FOUNDATION OF
  SOUTHERN CALIFORNIA
1313 W. Eighth St.
Los Angeles, CA 90017
213.977.9500
peliasberg@aclusocal.org


*Not admitted in DC; practice limited
  to federal courts

*Attorneys for Amici*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Circuit Rule 29-2(c)(3), I certify as follows:

1.     The foregoing amicus brief complies with the type-volume limitation of Circuit Rule 29-2(c)(3), because this brief contains 6,991 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii); and

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2011, the word processing system used to prepare the brief, in 14 point font in Times New Roman font.

s/David M. Shapiro
David M. Shapiro

**CERTIFICATE OF SERVICE**

I hereby certify that on February 15, 2016, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/David M. Shapiro
David M. Shapiro